UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GRAND RAPIDS ASSOCIATES
LIMITED PARTNERSHIP,

    Plaintiff,

v.

COOP PROPERTIES, LLC,
SMEELINK ACQUISITIONS, INC.,
TIMOTHY D. WESTRA, and
DENNIS TOUSSAINT,

    Defendants.
_____/

Case No. 1:08-CV-1122

HON. GORDON J. QUIST

## OPINION

Plaintiff, Grand Rapids Associates Limited Partnership ("GR Associates"), filed this action against its former tenant, Coop Properties, LLC ("Coop"), Coop's sole owner and employee, Timothy Westra ("Westra"), Smeelink Acquisitions, Inc. ("Smeelink Acquisitions"), and Smeelink Acquisitions' majority shareholder, Dennis Toussaint ("Toussaint"), collectively "Defendants." GR Associates alleges that Coop breached its lease agreement (Count I), and that Smeelink Acquisitions, Westra, and Toussaint are liable for Coop's breach of contract under alter ego and piercing the corporate veil theories of liability (Counts II, III, and IV). GR Associates also alleges that Coop committed fraud (Count V), and that Smeelink Acquisitions, Westra, and Toussaint are liable for Coop's fraud under the same alter ego and piercing the corporate veil theories (Count VI, VII, and VIII). Finally, GR Associates alleges that Smeelink Acquisitions, Westra, and Toussaint tortiously interfered with its contractual relations with Coop (Counts IX, X, and XI).

On March 6, 2009, the Court entered a consent judgment in favor of GR Associates on Count I in the amount of $105,001.76 for Coop's breach of contract, plus interest and any attorneys' fees the Court may subsequently allow. GR Associates then filed a motion to dismiss its tortious interference with contractual relations claims (Counts IX, X, and XI), but Defendants opposed this motion. The parties have also filed cross motions for summary judgment.[1] For the following reasons, the Court will grant in part and deny in part the parties' motions.

**Background**

In 2005, Westra, Toussaint, and Richard Cress formed Smeelink Acquisitions to purchase a chain of Smeelink Optical stores. While the negotiations with Smeelink Optical were proceeding, Westra contacted GR Associates to discuss the possibility of extending Smeelink Optical's preexisting lease. Westra indicated that Coop, a new legal entity, was looking to renew Smeelink Optical's lease at 2891 Radcliff Avenue, Kentwood, Michigan (the "Leased Premises") should Smeelink Optical decide to sell its assets. During his conversations with GR Associates, Westra informed a female employee at GR Associates of Coop's intention to sublease to Smeelink Acquisitions. (Westra Dep., Defs.' Ex. J at 25-26.)

On October 1, 2005, Smeelink Acquisitions acquired the assets of Smeelink Optical. On the same day, Coop signed a five-year lease with GR Associates for the Leased Premises, receiving a rent concession of approximately $2 per square foot. (Coop's Lease, Pl.'s Resp. Br. Ex. 4 at 4; Spatz Decl., Pl.'s Reply Br. Ex. 3 ¶ 16.) The lease required GR Associates' written permission before Coop subleased the Leased Premises. (Coop's Lease at 16.) Also on October 1, 2005,

---

[1] Defendants filed motions to dismiss and for summary judgment, attaching numerous exhibits to their brief. Pursuant to Rule 12(d), the Court will treat Defendants' motion to dismiss as a motion for summary judgment under Rule 56.

2

without obtaining GR Associates' written consent, Coop subleased the Leased Premises to Smeelink Acquisitions at cost on a month-to-month basis. (Smeelink Acquisitions' Sublease, Pl.'s Resp. Br. Ex. 7 at 1-2.) GR Associates did not conduct any due diligence on Coop prior to signing the lease.

Over the next thirty months, Smeelink Acquisitions paid all rent, utilities, and any other "expenses associated with that office location [the Leased Premises]." (Westra Dep. at 11, 14.) In fact, Smeelink Acquisitions sent every rent check for the Lease Premises directly to GR Associates. (Summary of Checks, Defs.' Ex. H.) On February 15, 2008, Smeelink Acquisitions notified Coop that it was terminating its sublease effective March 1, 2008. Having no assets of its own, Coop did not pay GR Associates any rent for the Leased Premises after Smeelink Acquisitions terminated the sublease.

## Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## Counts IX, X, and XI: Tortious Interference with Contractual Relations

Pursuant to Rule 41(a)(2), GR Associates has moved to voluntarily dismiss three claims for tortious interference with contractual relations from its Second Amended Complaint. Smeelink

3

Acquisitions, Westra, and Toussaint oppose this motion, arguing that: (1) Rule 41 applies to the entire action, not just a portion of that action; and (2) GR Associates is trying to use Rule 41 to avoid sanctions under Rule 11. Defendants have not filed a motion for sanctions.

Rule 41(a)(2) states that "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). However, "Rule 41(a) may not be employed to dismiss fewer than all of the claims against any particular defendant." Moore's Federal Practice § 41.21[1] (3d ed. 2010) (citing *Mgmt. Investors v. United Mine Workers of Am.*, 610 F.2d 384, 394-95 (6th Cir. 1979)). Here, GR Associates only seeks to dismiss three claims, not the entire action. Thus, the Court will construe GR Associates' motion for voluntary dismissal as a motion to amend the complaint under Rule 15(a). *See Baker v. City of Detroit*, 217 F. App'x 491, 496-97 (6th Cir. 2007) (stating that "it is not unusual for motions styled as Rule 41 motions or motions to dismiss to be construed as Rule 15 motions for leave to amend." (citations omitted)).

Under Rule 15(a)(2), more than 21 days after a party has served a responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Rule 15(a)(2) also instructs that "[t]he court should freely give leave when justice so requires." The mandate that "[t]he court should freely give leave" embodies "the principle that cases 'should be tried on their merits rather than the technicalities of the pleadings.'" *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (per curiam) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)). However, a court is not obliged to grant an amendment simply because a motion is made. *See Johnson v. Ventra Group, Inc.*, No. 96-1463, 1997 WL 468332, (6th Cir. Aug. 13, 1997) (per curiam). "A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be

futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995); *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).

In the instant case, Smeelink Acquisitions, Westra, and Toussaint claim that GR Associates brought its motion to avoid sanctions, but Defendants fail to substantiate this allegation. Moreover, the elimination of three claims will not prejudice any Defendant, but will conserve judicial resources when deciding the parties' cross-motions for summary judgment. Therefore, the Court will grant GR Associates' motion to amend to eliminate its tortious interference claims, Counts IX, X, and XI.

### Counts V, VI, VII, and VIII: Fraud

"Actionable common-law fraud requires proof that (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage." *Cummins v. Robinson Twp.*, 283 Mich. App. 677, 695-96, 770 N.W. 2d 421, 435 (2009) (citation and quotations omitted). GR Associates argues that Coop committed fraud under three theories: intentional misrepresentation, silent fraud, and fraud based on a bad faith promise.

"Under Michigan law, reasonable reliance is an essential element of a fraud claim." *In re Jackson Nat'l Life Ins. Premium Litig.*,107 F. Supp. 2d 841, 865 (W.D. Mich. 2000) (citation omitted). *See also Nieves v. Bell Indus., Inc.*, 204 Mich. App. 459, 464, 517 N.W.2d 235, 238 (1994) (stating that "[a] misrepresentation claim requires reasonable reliance on a false representation."); *Lumber Vill., Inc. v. Siegler*, 135 Mich. App. 685, 700, 355 N.W. 2d 654, 660 (1984) (finding that "[i]n addition to the duty to disclose, silent fraud requires a plaintiff to establish reliance." (citation omitted)); *Colby v. Zimmerman*, No. 220395, 2001 WL 1219414, at \*1 (Mich.

5

Ct. App. Oct. 12, 2001) (explaining that for a claim of fraud based on a defendant's bad faith promise, "a plaintiff must show that, at the time the defendant made the promise, he had a bad-faith, fraudulent intent regarding the future activity in order to deceive the plaintiff and to induce his reliance." (citation omitted)).

A plaintiff cannot establish reasonable reliance, and thus may not maintain a fraud claim, "where the means of knowledge regarding the truthfulness of the representation are available to the plaintiff and the degree of their utilization has not been prohibited by the defendant." *See The Mable Cleary Trust v. The Edward-Marlah Muzyl Trust*, 262 Mich. App. 485, 501, 686 N.W. 2d 770, 783 (2004) (citation and quotations omitted). This rule has been applied in cases where "the plaintiffs were either presented with the information and chose to ignore it or had some other indication that further inquiry was needed." *Id.* (holding that the "means of knowledge rule" did not apply even though plaintiff subdivision lot owners had constructive notice of a third party's interest in the land's mineral rights because several warranty deeds provided that the defendant developers retained any and all mineral rights and the developers represented that any mineral development would be in accordance with the subdivision's restrictive covenants) (citations omitted); *but compare Aron Alan, LLC v. Tanfran, Inc.*, 240 F. App'x 678 (6th Cir. 2007) (affirming district court's grant of summary judgment based on plaintiff's unreasonable reliance where the written materials provided to plaintiff were contradictory and "at the very least it was clear that there were competing representations of the truth") *with Webb v. First of Mich. Corp.*, 195 Mich. App. 470, 491 N.W. 2d 851 (1992) (holding that plaintiffs could not claim to have been defrauded by defendant's broker's oral statement than an investment was "risk free" when even a cursory review of the investment prospectus and other documents plaintiff received would have shown plaintiffs that the investment was not "risk free").

In the instant action, GR Associates: (1) knew that two corporations were involved in the lease; (2) had the ability to make an in-depth inquiry into Coop; and yet (3) failed to make any

6

further inquiry or perform any due diligence on its prospective tenant. Prior to entering the Lease, Westra informed a female employee at GR Associates of the sublease, and GR Associates has not presented a Rule 56(f) affidavit or any admissible evidence challenging this assertion.[2] (Westra Dep. at 25-26.) In fact, GR Associates' tenant file for Coop had two leases with different tenant names: (1) an unexecuted lease dated "9/14/2005" with "Smeelink Acquisitions, Inc." listed as the tenant; and (2) a signed lease with "Coop Properties, L.L.C." listed as the tenant and lease years ranging from "10/05 - 9/06" to "10/09 - 9/10." (*Compare* Unexecuted Smeelink Acquisitions Lease, Defs.' Ex. B *with* Coop's Lease, Pl.'s Resp. Br. Ex. 4.) And, GR Associates knew that a current tenant was being acquired by a newly formed entity, an entity with which GR Associates did not have any prior business relationship. (Spatz Dep. at 28-29, 32.) Given all this information, any reliance on Coop's conduct or statements without further inquiry was unreasonable.

Moreover, GR Associates could have asked Coop for financial information. In Section 8.1 of Coop's Lease, paragraph "r.," a tenant covenants

> To promptly furnish Landlord, from time to time, whenever requested by Landlord, financial statements in form satisfactory to Landlord reflecting Tenant's current financial condition, setting forth, without limitation thereby, Tenant's assets, liabilities, revenues, expenses and costs, and cash flow. . . .

(Coop's Lease, Pl.'s Resp. Br. Ex. 4 at 14.) Despite knowing that two corporations were involved and having the ability to request financial information from Coop, GR Associates did not conduct any due diligence, not even a background check. (Spatz Dep. at 28-34.) GR Associates did not inquire about the structure or nature of the corporate acquisition, nor did GR Associates request

---

[2]GR Associates cites the Declaration of William Spatz to support its contention that Westra never informed GR Associates of the proposed sublease. (Spatz Decl., Pl.'s Reply Br. Ex. 3 ¶¶ 11-12). However, Spatz stated in his deposition that Vivian Thompson was employed at Spatz Centers at the time the Lease was negotiated, (Spatz Dep., Defs.' Ex. C at 26-27), and GR Associates has not produced any testimony from Ms. Thompson to dispute Westra's testimony. *See Turner v. Mut. Benefit Health & Accident Ass'n*, 316 Mich. 6, 21, 24 N.W. 2d 534, 540 (1946) (stating that "[t]he general rule is that knowledge of an agent on a material matter, acquired within the scope of the agency, is imputed to the principal." (citation omitted)). Therefore, GR Associates failed to present any evidence creating an issue of fact to preclude summary judgment.

7

Coop to provide any reference, financial information, credit report, or guaranty. (Spatz Dep. at 29, 33-34; Pl.'s Twice Supplemented Resp. to Defs.' First Req. for Admis., docket no. 57 ¶¶ 29-31.) Even after receiving rent checks from Smeelink Acquisitions for thirty months, GR Associates still did not invoke its right to ask Coop for any financial information. (Summary of Checks, Defs.' Ex. H.) Therefore, GR Associates failed to establish reasonable reliance because GR Associates knew of the sublease, had the means of knowledge to ascertain the veracity of any representation, and failed to conduct any further inquiry into Coop's corporate structure or finances. *See Aron Alan,* 240 F. App'x at 683 (stating that "[t]here can be no fraud where it is apparent that all the representations cannot simultaneously be true." (citation omitted)). The Court will thus grant Defendants summary judgment on Counts V, VI, VII, and VIII.

### Counts II, III, and IV: Breach of Contract[3]

"Where the corporation is a mere agent or instrumentality of its shareholders or a device to avoid legal obligations, the corporate entity may be ignored." *Kline v. Kline*, 104 Mich. App. 700, 702, 305 N.W. 2d 297, 298-99 (1981). For the corporate veil to be pierced, the corporate entity must: (1) "be a mere instrumentality of another individual or entity;" (2) "have been used to commit a wrong or fraud;" and (3) "there must have been an unjust injury or loss to the plaintiff." *Rymal v. Baergen*, 262 Mich. App. 274, 293-94, 686 N.W. 2d 241, 252 (2004) (citations omitted). Michigan courts consider "the entire spectrum of relevant facts," including such factors as "undercapitalization of the corporation, maintenance of separate books, separation of corporate and individual finances, use of the corporation to support fraud or illegality, honoring of corporate formalities, and whether the corporation is merely a sham." Rachel Kane et al., 6 Mich. Civ. Jur.,

---

[3] Michigan courts apply the same standard to claims brought under alter ego and piercing the corporate veil theories. *See In re RCS Eng'red Prods. Co.*, 102 F.3d 223, 226 (6th Cir. 1996). Therefore, the Court's analysis of GR Associates' breach of contract claims brought pursuant to a piercing the corporate veil theory also applies to the breach of contract claims under the alter ego theory.

Corporations §§ 11-12 (2003 ed.) (citations omitted). Although a showing of fraud is not necessary to pierce the corporate veil, *Concept One Int'l, Inc. v. Nippecraft Ltd.*, No. 1:96-CV-565, 1997 WL 483248, at *5 n.2 (W.D. Mich. Feb. 14, 1997), "the injustice sought to be prevented must in some manner relate to a misuse of the corporate form short of fraud or illegality." *Soloman v. W. Hills Dev. Co.*, 110 Mich. App. 257, 264, 312 N.W. 2d 428, 432 (1981).

### A. Smeelink Acquisitions

GR Associates can pierce Coop's corporate veil to hold Smeelink Acquisitions liable for Coop's breach of contract. First, Coop was used as a mere instrumentality of Smeelink Acquisitions. Coop was formed to accomplish two purposes: (1) enter into a lease agreement with GR Associates; and (2) sublease that same space to Smeelink Acquisitions. (Westra Dep. at 15.) Coop did not have any assets, and Smeelink Acquisitions paid all rent, utilities, and any other "expenses associated with that office location [the Leased Premises]." (Westra Dep. at 11, 14.) Furthermore, Coop and Smeelink Acquisitions shared a corporate officer, for Westra was a shareholder and the chief financial officer of Smeelink Acquisitions and Coop's sole owner and employee. (Westra Dep. at 6, 10.) Finally, Coop did not honor any corporate formalities, nor did Coop maintain separate books from Smeelink Acquisitions. In fact, Smeelink Acquisitions sent every rent check, thirty in total, for the Leased Premises directly to GR Associates. (Summary of Checks, Defs.' Ex. H.)

Second, Smeelink Acquisitions used Coop to commit an injustice. GR Associates leased Coop the Leased Premises for a five-year term, (Coop's Lease, Pl.'s Resp. Br. Ex. 4 at 4), and gave Coop a rent concession of approximately $2 per square foot. (Spatz Decl., Pl.'s Reply Br. Ex. 3 ¶ 16.) However, Coop subleased the Leased Premises to Smeelink Acquisitions at cost on a month-to-month basis. (Smeelink Acquisitions' Sublease, Pl.'s Resp. Br. Ex. 7 at 1-2.) In the commercial real estate market, month-to-month leases normally require a rent premium of at least thirty percent.

(Spatz Decl. ¶¶ 15-16.) Therefore, Smeelink Acquisitions obtained a month-to-month commercial lease at well below market rates when similar leases demand significant surcharges.

Finally, Smeelink Acquisitions' abuse of Coop's corporate form deprived GR Associates of rental income in the form of a below market value rental rate and the remaining eighteen months of rental income under the five-year lease. Therefore, Smeelink Acquisitions is liable for Coop's breach of contract under a piercing the corporate veil theory.

### B. Westra and Toussaint

GR Associates has failed to put forth any facts supporting its breach of contract claims against Westra and Toussaint under a piercing the corporate veil theory. Unlike the situation with Smeelink Acquisitions, GR Associates failed to show that Westra and Toussaint commingled their personal funds with Coop or Smeelink Acquisitions. Even if the Court accepts GR Associates' claim that Toussaint directed Westra to form Coop, this only supports the Court's finding that Smeelink Acquisitions used Coop as a sham corporation. GR Associates has not shown that Westra and Toussaint abused Smeelink Acquisitions' corporate form to justify piercing Smeelink Acquisitions' corporate veil. Therefore, the Court will grant Westra and Toussaint's motion for summary judgment on Counts III and IV.

### C. Westra and Smeelink Acquisitions

In its reply brief, GR Associates argues that Westra and Smeelink Acquisitions are liable for Coop's breach of contract under the theory of respondeat superior. This issue is not properly before the Court because GR Associates raised the argument for the first time in its reply brief, foreclosing Westra and Smeelink Acquisitions' opportunity to respond. *See ABC Bev. Corp. & Subsidiaries v. United States*, 577 F. Supp. 2d 935, 950 n.16 (W.D. Mich. 2008); *see also Sundberg v. Keller Ladder*, 189 F. Supp. 2d 671, 682-83 (E.D. Mich. 2002) (stating that "it is not the office of a reply brief to raise issues for the first time." (citation omitted)).

**Conclusion**

For the foregoing reasons, the Court will grant in part and deny in part GR Associates' motion for summary judgment and grant in part and deny in part Defendants' motion for summary judgment. Additionally, the Court will grant GR Associates' motion to dismiss.

An Order consistent with this Opinion will be entered.


Dated: September 2, 2010                          /s/ Gordon J. Quist
                                                                      GORDON J. QUIST
                                                 UNITED STATES DISTRICT JUDGE